Case No. _____  Document 1 Filed 12/1/25

# UNITED STATES DISTRICT COURT

## FOR THE MIDDLE DISTRICT OF FLORIDA

### TAMPA DIVISION

DEC 11 2025 PM 1:45
FILED - USDC - FLMD - TPA

_____
                                                )
ARLENE ALLEN-CORNWALL, an individual,   )
                           Plaintiff,           )
                                                )
v.                                              )
                                                )   Civil Action No. 8:25-cv-3385-WFJ-AEP
                                                )   (to be assigned by Clerk)
EXPERIAN INFORMATION SOLUTIONS, INC.    )
                           Defendants.          )
                                                )
_____

**JURY TRIAL DEMANDED**

**PLAINTIFF'S COMPLAINT**

**FOR DAMAGES, INJUNCTIVE RELIEF, AND OTHER RELIEF FOR VIOLATIONS OF THE FAIR CREDIT REPORTING ACT; 15 U.S.C. §§ 1681e(b), 1681i, 1681s-2(b)**

1. Plaintiff Arlene Allen-Cornwall brings this action against Defendant Experian Information Solutions, Inc. ("Experian") for willful and negligent violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* Experian has persistently reported an inaccurate Chapter 7 bankruptcy on Plaintiff's credit report even after its data furnisher, LexisNexis Risk Solutions Inc. ("LexisNexis"), deleted that record from its system as unverifiable. Despite multiple disputes and proof of deletion, Experian continued to "verify" the obsolete bankruptcy, thereby publishing false information to creditors and causing serious harm to Plaintiff's credit reputation.



2. The FCRA is designed to ensure fair and accurate credit reporting and imposes important duties on consumer reporting agencies. Under 15 U.S.C. § 1681e(b), agencies must "follow reasonable procedures to assure maximum possible accuracy" of information. Under 15 U.S.C. § 1681i, when a consumer disputes an item, the agency must conduct a reasonable reinvestigation and delete any information that is inaccurate or "cannot be verified". These requirements mean that a credit bureau cannot merely be a passive conduit of information, it must proactively ensure the information it reports is correct. As courts have observed, once a consumer alerts a credit bureau to a potential inaccuracy, the bureau is "in a very different position" than one with no notice and must do more than simply repeat the furnisher's data. *See, e.g., Bryant v. TRW, Inc.*, 689 F.2d 72, 78 (6th Cir. 1982) (credit bureau must be more than a "conduit" and cannot rely on unverified data when accuracy is in doubt); *Henson v. CSC Credit Servs.*, 29 F.3d 280, 285 (7th Cir. 1994) ("a [CRA] that has been notified of potentially inaccurate information ... is in a very different position" and may need to go beyond its initial source)

3. Experian violated these FCRA mandates by (a) failing to follow reasonable procedures to assure maximum accuracy, (b) failing to conduct a bona fide reinvestigation of Plaintiff's disputes, and (c) refusing to promptly delete or update the disputed bankruptcy record after being notified, both by Plaintiff and by its own furnisher, that the information was invalid. Plaintiff seeks actual, statutory, and punitive damages, injunctive relief to correct her credit file, and attorneys' fees and costs pursuant to 15 U.S.C. §§ 1681n and 1681o, as well as any other relief the Court deems just. Plaintiff also respectfully demands a trial by jury on all issues so triable.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C. § 1681p because this action arises under the FCRA, a federal law. The FCRA expressly authorizes consumers to bring claims in federal court to enforce its provisions.

5. Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. § 1391(b) because Experian regularly conducts business in this District and because the events giving rise to Plaintiff's claims occurred in substantial part in this District. Plaintiff is a resident of this District (Hillsborough County, Florida), and the credit reporting and disputes at issue were directed to and experienced in this District.

6. Assignment to the Tampa Division is appropriate under Local Rule 1.04, as the causes of action arose from acts impacting Plaintiff in Hillsborough County (Tampa area).

### PLAINTIFF

7. **Plaintiff Arlene Allen-Cornwall** is a natural person and a citizen of Florida. She resides at 1518 Blue Rose Drive, Ruskin, Florida 33570. Plaintiff is a "consumer" as defined in 15 U.S.C. § 1681a(c) in that she is an individual and the subject of personal credit information. At all relevant times, Plaintiff has been financially responsible and has sought to maintain accurate credit information.

### DEFENDANT CONSUMER REPORTING AGENCIES

8. **Defendant Experian Information Solutions, Inc.** ("Experian") is an Ohio corporation with its principal place of business at 475 Anton Boulevard, Costa Mesa, California 92626. Experian is registered to do business in Florida and may be served through its registered agent, CT Corporation System, 1200 South Pine Island Road, Plantation, FL 33324. Experian is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f), meaning it is in the business of assembling or evaluating consumer credit information for the purpose of furnishing consumer reports to third parties for monetary fees. Experian is one of the "Big Three" national credit bureaus and operates throughout the United States, including substantial operations affecting consumers in Florida.

9. **LexisNexis Risk Solutions, Inc. ("LexisNexis")** is a third-party data company that collects public record information (including bankruptcy filings from federal courts' PACER system) and furnishes that data to Experian and other credit bureaus. LexisNexis acted as Experian's *furnisher* or vendor for bankruptcy records during the events in question. Although LexisNexis is not named as a defendant in this action, its role is central to the facts: LexisNexis was the sole source of the bankruptcy information Experian reported about Plaintiff, and LexisNexis ultimately deleted the record in question, notifying that it was inaccurate.

## FACTUAL ALLEGATIONS

### A. The Inaccurate Bankruptcy Record and its Deletion by LexisNexis

10. In or around 2017, Plaintiff Arlene Allen-Cornwall's name became associated with a Chapter 7 bankruptcy public record (No. 1806459RAC[1]) on her credit reports. This may have resulted from a clerical error or mix-up, as Plaintiff had not filed a Chapter 7 bankruptcy that should legitimately appear on her credit history. Nevertheless, Experian, relying on data from LexisNexis, added a derogatory entry to Plaintiff's consumer report indicating that she had filed Chapter 7 bankruptcy in or about 2017, with a status of "discharged" in 2018. This entry was materially inaccurate as it did not pertain to Plaintiff and/or was reported in an outdated, misleading manner.

11. Experian does not itself go to courthouses to gather bankruptcy information; instead, it contracts with LexisNexis to receive bankruptcy records on a routine basis. LexisNexis aggregates public filings and electronically provides data on new bankruptcies and updates (such as discharges) to Experian. In Plaintiff's case, LexisNexis had at one point furnished the above-mentioned bankruptcy record to Experian, which is how it came to be on Plaintiff's report. Crucially, if LexisNexis removes or corrects a bankruptcy record (for example, upon finding it was erroneous or does not match the consumer), Experian's policy and practice should be to mirror that change so that the consumer's credit file remains

---

[1] The reference "Bankruptcy 1806459RAC" appears to be an internal identifier used by Experian/LexisNexis for the public record in question. It is the number referenced on Plaintiff's credit report and LexisNexis communications to denote the disputed bankruptcy

accurate. In other words, once the furnisher deletes a public record from its feed, Experian has no permissible basis to keep reporting that item.

12. After Plaintiff learned Experian was reporting this bankruptcy, she initiated a direct dispute with LexisNexis and also filed a complaint with the Consumer Financial Protection Bureau ("CFPB") regarding the accuracy of the record. As a result, LexisNexis conducted a reinvestigation of the bankruptcy entry. By letter dated July 25, 2025, LexisNexis informed Plaintiff (through the CFPB) of the outcome: *"the disputed item was deleted on 7/25/2025… LexisNexis located and removed bankruptcy filing number 1806459 from the consumer's file."* LexisNexis' deletion letter (attached hereto as Exhibit D) confirms that the bankruptcy record attributed to Plaintiff was determined to be inaccurate or unverified and was permanently removed from LexisNexis's database. In effect, the sole furnisher of this bankruptcy data officially acknowledged the information was erroneous or no longer reliable.

13. Upon completing its reinvestigation, LexisNexis would have updated its reporting to Experian. Typically, when LexisNexis deletes a record, it sends an automated update or batch file to credit bureaus indicating that the item should be deleted from consumer reports. Thus, on or about late July 2025, Experian received notice, either through LexisNexis's normal data feed or through the dispute process, that the bankruptcy item for Plaintiff could not be verified and was deleted by the furnisher. Under the FCRA, when information in a consumer's file is found to be inaccurate or cannot be verified, the credit reporting agency "shall promptly delete" that information. *See* 15 U.S.C. § 1681i(a)(5)(A) (requiring deletion of disputed information that is inaccurate or unverifiable). At this point, Experian was obligated to remove the bankruptcy from Plaintiff's credit file.

**B. Plaintiff's Disputes to Experian and Experian's Unreasonable "Verifications"**

14. **First Dispute - February 28, 2025:** Even before LexisNexis's deletion, Plaintiff directly notified Experian that the bankruptcy on her report was incorrect. On February 28, 2025, Plaintiff sent Experian a written dispute letter (attached as Exhibit A) identifying the bankruptcy entry and explaining that it did not belong on her credit report. In this letter, Plaintiff explicitly invoked her rights under the FCRA, citing 15 U.S.C. § 1681e(b) and § 1681i, and demanded that Experian investigate and remove the

erroneous bankruptcy. She noted that the bankruptcy record appeared to be unsupported by any legitimate source (for example, the relevant court had no such record for her) and that continuing to report it would be a willful FCRA violation. Experian received this dispute but failed to correct or delete the item. Instead, Experian responded in or around March 2025 with a form letter stating that it had "verified" the bankruptcy as accurate. In doing so, Experian presumably relied on a cursory check with LexisNexis or its own database, rather than conducting any independent investigation. Experian did not contact any bankruptcy court or obtain underlying court documents at this time; it simply repeated what its electronic record showed, a practice courts have deemed insufficient when a consumer flags a potential error.

15. **Second Dispute - March 29, 2025:** After Experian's inadequate response, Plaintiff sent a second dispute letter on March 29, 2025 (attached as Exhibit B). In this follow-up letter, Plaintiff again insisted that the bankruptcy was not hers or was inaccurately reported, and she challenged Experian's "verification" as implausible given that no actual public record substantiated the reporting. She reiterated that Experian had a duty to forward her dispute to the furnisher and to delete information that could not be confirmed. This March 29 letter put Experian on further notice that simply regurgitating LexisNexis's data was resulting in a continuing error. However, Experian once more failed to remove the bankruptcy. Upon receiving the second dispute, Experian did not meaningfully reinvestigate; it either treated the dispute as frivolous or duplicative, or again relied on automated processes. In any case, Experian responded (or otherwise indicated) that the bankruptcy entry remained "previously verified" and it took no action to correct the report.

16. On information and belief, Experian did not forward Plaintiff's dispute to LexisNexis after the first or second letters, contrary to 15 U.S.C. § 1681i(a)(2). If it had, LexisNexis at that time might have informed Experian that the record was questionable or slated for deletion. Instead, Experian appears to have unilaterally concluded the disputes were not valid, perhaps invoking its internal "suspicious mail" or automated dispute filtering policy, and simply reinserted the same data without any new verification. This conduct violated Experian's reinvestigation duties. *See* 15 U.S.C. § 1681i(a)(3)(A) (a CRA can treat a dispute as frivolous or irrelevant only if it has a reasonable basis to believe the dispute is invalid and, after

such determination, must notify the consumer). Here, Experian gave no proper notice of a frivolous-dispute finding; it simply ignored the substance of Plaintiff's disputes. Courts have criticized Experian for employing automated dispute rejection practices that bypass genuine consumer complaints. Experian's failure to properly process Plaintiff's disputes meant the erroneous bankruptcy stayed on her report month after month.

    17. **Final Dispute and Intent to Sue - July 28, 2025:** After LexisNexis deleted the record on July 25, 2025, Plaintiff promptly sent Experian a third letter on July 28, 2025 (attached as Exhibit C). This letter was a formal "Final Notice and Intent to Sue". In it, Plaintiff notified Experian that its own furnisher (LexisNexis) had concluded the bankruptcy record was inaccurate and removed it as of July 25, 2025 (enclosing a copy of the LexisNexis deletion confirmation). Plaintiff's July 28 letter demanded that Experian immediately delete the bankruptcy from her credit file and warned that if Experian failed to comply, she would pursue legal action under the FCRA. She cited applicable case law and FCRA provisions, emphasizing that Experian had no remaining basis to continue reporting the bankruptcy: since LexisNexis no longer affirmed the data, any further "verification" by Experian would be patently false. Despite this incontrovertible proof, Experian still did not remove the bankruptcy. In or about August 2025, Experian communicated to Plaintiff (directly or via an updated credit report) that the bankruptcy item had been "updated" or "verified as accurate", even though the sole source of the information had told Experian it should be deleted. In essence, Experian stubbornly persisted in reporting an item that it *knew* could not be verified by its furnisher or by any reasonable means.

    18. From August 2025 to the present, Experian has continued to include the nonexistent bankruptcy on Plaintiff's credit reports available to lenders and other third parties. Every time Experian prepared a consumer report regarding Plaintiff, it failed to assure maximum possible accuracy by leaving this derogatory, false notation in place. Each "verification" by Experian was unjustified and in bad faith, serving only to prolong the presence of a damaging falsehood on Plaintiff's credit. By October 2025, Plaintiff had exhausted her options short of litigation: Experian had ignored three written disputes and

even the furnisher's deletion. Accordingly, Plaintiff has filed this lawsuit to enforce her rights and finally correct her credit record.

19. Experian's misconduct has severely damaged Plaintiff's credit standing and caused real injuries. A Chapter 7 bankruptcy is one of the most negative entries possible on a credit report, typically leading to a major drop in credit score and making it difficult or impossible to obtain new credit on reasonable terms. As a direct result of Experian's continued reporting of the phantom bankruptcy, Plaintiff's credit score has been depressed by dozens of points. She has been denied credit opportunities that she otherwise would have qualified for, and she has been forced to seek credit from subprime lenders at higher interest rates (or not at all). For example, in the summer of 2025, Plaintiff applied for a personal loan and was declined; the adverse action notice identified "Delinquency or Derogatory Public Record" as a key factor, which refers to the bankruptcy entry on her report. Additionally, Plaintiff has suffered emotional distress, anxiety, and reputational harm. It is embarrassing and stressful for her to be perceived as someone who declared bankruptcy when in fact she did not. She has spent considerable time and effort attempting to correct this error, including correspondence, filing a CFPB complaint, and seeking legal assistance. Experian's refusal to perform its duties has thus caused Plaintiff both economic and non-economic harm.

## CAUSES OF ACTION

**(Each count realleges and incorporates by reference all preceding paragraphs.)**

### Count I: Violation of 15 U.S.C. § 1681e(b) - Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy

20. Section 1681e(b) of the FCRA mandates that whenever a consumer reporting agency prepares a consumer report, it "shall follow reasonable procedures to assure maximum possible accuracy" of the information concerning the consumer. This provision imposes an affirmative obligation on CRAs to establish and adhere to systems that ensure reported data is as accurate as possible.

21. The information Experian reported about Plaintiff, namely, the Chapter 7 bankruptcy notation, was inaccurate and materially misleading. Plaintiff had no such bankruptcy that should have been on her credit file, and by July 2025 Experian was aware that its own data source had expunged the record. Plaintiff easily meets the threshold of showing an inaccuracy in her report, which is a prerequisite for FCRA claims. Once such an inaccuracy is shown, "the reasonableness of the procedures and whether the agency followed them" becomes a jury question in the majority of cases.

22. Experian failed to follow reasonable procedures to assure maximum accuracy in multiple ways. First, Experian continued to report the bankruptcy after LexisNexis (the only source of that information) had deleted it, which by itself indicates a breakdown in Experian's procedures. A reasonable procedure would be to promptly update or delete records in tandem with furnisher corrections; Experian did not do so. Second, Experian's internal policies apparently allowed it to dismiss Plaintiff's disputes as suspicious or duplicative without substantive review, meaning obvious red flags were ignored. Third, Experian relied solely on automated matching and the furnisher's initial data, without any quality control to catch the error. For example, Experian could have cross-checked the bankruptcy against public court dockets (PACER) when Plaintiff challenged it, a minimal step given the dispute evidence, but it failed to do so. By "verifying" an item that it had no independent proof of, Experian showed that its procedures were geared toward speed and automation rather than accuracy.

23. It is well established that credit bureaus cannot rely blindly on furnishers or superficial checks when they have reason to doubt an item's accuracy. In *Bryant v. TRW, Inc.*, the Sixth Circuit held that a CRA's procedures were unreasonable when it merely made perfunctory contacts to sources and failed to dig deeper into disputed information. The court affirmed liability because the CRA should have done more than simply repeat the creditor's information. Similarly, the Eleventh Circuit has ruled that once a consumer alerts a CRA to a specific error, the CRA "must do more than rely on its furnisher; it must evaluate the reliability of the information" and ensure it isn't just rubber-stamping an inaccuracy. Experian's conduct here violated these principles. Rather than employ safeguards to catch or correct

outdated public record data, Experian effectively acted as a passive transmitter of LexisNexis's (outdated) information.

24. By August 2025, Experian knew or had ample reason to know that the bankruptcy entry on Plaintiff's report was no longer verified by any source. Nevertheless, Experian continued to report it. This continued reliance was unreasonable. While credit bureaus are entitled to rely on reputable third-party sources in the first instance, that reliance becomes unreasonable once the data is called into question. *See, e.g., Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997) (CRA cannot satisfy its obligations by "merely parroting" the furnisher's information once a dispute is raised); *Dennis v. BEH-1, LLC*, 520 F.3d 1066, 1069 (9th Cir. 2008) (credit bureau must ensure accuracy and is not shielded just because information came from public records; reasonableness of procedures is for the jury when errors occur). Experian violated § 1681e(b) by acting without the level of care that a reasonably prudent credit bureau would have exercised under these circumstances.

25. Experian's failure to follow reasonable procedures caused Plaintiff to suffer actual damages as described above. Had Experian maintained proper procedures, for example, timely updating records upon furnisher deletion, or flagging and investigating disputes with supporting evidence, Plaintiff's credit file would have been corrected far earlier, preventing months of false reporting. Instead, the inaccurate bankruptcy remained and was sent to creditors reviewing Plaintiff's credit, leading to denials and a damaged credit reputation. Plaintiff has sustained economic losses (lost credit opportunities, higher costs of credit) and emotional distress directly due to Experian's unreasonable practices. Pursuant to 15 U.S.C. §§ 1681n and 1681o, Experian is liable to Plaintiff for these actual damages. Moreover, Experian's conduct was willful or at least grossly negligent: ignoring a furnisher's deletion and a consumer's repeated disputes is a blatant violation of known FCRA requirements, justifying punitive damages under § 1681n.

### Count II: Violation of 15 U.S.C. § 1681i(a) - Failure to Conduct a Reasonable Reinvestigation and Delete Inaccurate Information

26. Section 1681i(a)(1)(A) of the FCRA requires a consumer reporting agency, upon receiving a dispute from a consumer about any item in her file, to "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate" and either verify it as accurate or delete/correct it within 30 days. Additionally, under § 1681i(a)(5), if an item "is found to be inaccurate or incomplete or cannot be verified," the agency must promptly delete or modify that item from the file. The reinvestigation obligation includes forwarding notice of the dispute to the furnisher of the information (§ 1681i(a)(2)) and considering all relevant information provided by the consumer.

27. Experian violated § 1681i by utterly failing to conduct a reasonable reinvestigation of Plaintiff's disputes. At minimum, a reasonable reinvestigation would have entailed: (a) forwarding the dispute and supporting documents to LexisNexis for fresh review, (b) checking publicly available records (such as the federal bankruptcy court's PACER system or the applicable court docket) to verify whether Plaintiff actually had a bankruptcy, and (c) reviewing the information Plaintiff provided (like the LexisNexis deletion letter) which indicated the data was invalid. Experian did none of these. Instead, for the February and March 2025 disputes, Experian appears to have relied on its automated system (e-Oscar or similar) to send a generic verification request and then simply reiterated the same information without change, effectively a "no investigation" approach. For the July 28, 2025 dispute, Experian incredibly *ignored the evidence of deletion* and marked the dispute resolved with the item verified. This mechanical or non-existent reinvestigation falls far short of what § 1681i requires. As the Third Circuit noted in *Cushman v. Trans Union*, a reinvestigation that "merely confirm[s] the record with the original source" is not sufficient, the CRA must look beyond the initial source when the consumer provides evidence challenging the accuracy. Experian ignored that mandate.

28. Experian also failed to properly notify and forward all relevant information to LexisNexis about Plaintiff's disputes, as required by 15 U.S.C. § 1681i(a)(2). By not forwarding the early disputes, Experian deprived the furnisher of the opportunity to reinvestigate and correct the error sooner. By July 2025, even if Experian had belatedly forwarded the dispute, LexisNexis had *already* independently found

the error and deleted it, yet Experian still failed to act on that knowledge. This indicates Experian's internal processes are not just unreasonable but actively non-compliant with the statute's reinvestigation framework. Courts have long held that a "reasonable reinvestigation" by a CRA must go beyond merely asking the original source if the information is the same; when a consumer provides documentation or a strong indication of inaccuracy, the CRA must take it into account and dig deeper. Experian's approach did not change at all in light of Plaintiff's evidence. In fact, Experian's reinvestigation (if it can be called that) was so cursory and result-oriented that it produced the exact same erroneous outcome even after the basis for the information had been undermined. This is precisely the kind of reinvestigation failure that the FCRA forbids.

29. Furthermore, Experian violated § 1681i(a)(5) by not deleting the bankruptcy when it became clear the information could not be verified. By July 28, 2025, Experian was in possession of a LexisNexis notice that the item was deleted due to inaccuracy (Ex. D) and Plaintiff's own dispute letter (Ex. C) explaining the situation. At that juncture, even if Experian harbored any doubts, it had **no verification** from any source that the bankruptcy actually pertained to Plaintiff (indeed, the only possible source had renounced it). The FCRA is explicit that if disputed info "cannot be verified," the CRA "shall delete" it from the file. *See* 15 U.S.C. § 1681i(a)(5)(A). Experian's persistence in reporting the bankruptcy after July 2025 represents a blatant violation of this provision. The Eleventh Circuit's recent decision in *Losch v. Experian Info. Solutions, Inc.*, 995 F.3d 937 (11th Cir. 2021) is directly on point. In *Losch*, Experian continued reporting a delinquent account even after the consumer repeatedly disputed it and evidence showed it was inaccurate; the court held that Experian's post-dispute measures were not "reasonable" and allowed the case to proceed. Here, Experian's conduct is even more egregious, as it ignored the furnisher's own resolution. As the Eleventh Circuit noted, credit agencies cannot simply declare information "verified" without doing the work to ensure its accuracy. Experian's reinvestigation failure in Plaintiff's case is a textbook example of FCRA non-compliance.

30. Experian's § 1681i violations caused the inaccurate bankruptcy to remain on Plaintiff's credit report for an extended period, leading to the harms described earlier. Plaintiff's damages, including lost opportunities and emotional distress, flow from Experian's refusal to reinvestigate properly and correct her file. Had Experian complied with § 1681i, the entry would have been removed by early 2025 and much of Plaintiff's injury would have been avoided. Therefore, Experian is liable for Plaintiff's actual damages under 15 U.S.C. § 1681o. Additionally, given the willful and reckless nature of Experian's conduct (ignoring clear evidence and multiple disputes), Plaintiff is entitled to statutory and punitive damages under 15 U.S.C. § 1681n. Experian's conduct was willful because it consciously elected to rely on its flawed automated processes and to prioritize expediency over accuracy, in knowing disregard of FCRA mandates and consumers' rights.

**Count III: Violation of 15 U.S.C. § 1681s-2(b) - Failure to Properly Update and Correct Information After Notice of Dispute from Furnisher**

31. Section 1681s-2(b) of the FCRA imposes duties on "furnishers" of information (like LexisNexis) once they receive notice of a dispute from a CRA. In essence, upon such notice, the furnisher must investigate and report the results back to the CRA, and if the information is inaccurate or unverifiable, modify or delete it. While § 1681s-2(b) directly addresses furnishers, its successful operation is integral to a CRA's duty to maintain accurate files. Once a furnisher notifies a CRA that disputed information is incorrect or should be deleted, the CRA must promptly update its reports to reflect that outcome. A CRA that fails to heed a furnisher's correction is effectively undermining the dispute resolution scheme envisioned by § 1681s-2(b).

32. In this case, LexisNexis (the furnisher) received notice of Plaintiff's dispute (via the CFPB complaint and possibly via Experian's own notice) and undertook a reinvestigation, as described. LexisNexis complied with its obligation by finding the bankruptcy record was erroneous and deleting it on July 25, 2025. LexisNexis would have then notified Experian, either through automated data

transmissions or formal dispute response, that the item was deleted and should no longer be reported. This constituted notice to Experian that the information was disputed and, indeed, not verifiable (since the furnisher itself removed it). Under the FCRA's structure, Experian was required to promptly modify or delete the information in its own file to reflect the results of the furnisher's investigation.

33. Experian violated the intent and effect of § 1681s-2(b) by failing to modify or delete the bankruptcy tradeline after receiving the furnisher's notice of deletion. In practice, once LexisNexis communicated the deletion, Experian should have either: (a) removed the bankruptcy from Plaintiff's credit report entirely, or (b) at minimum, updated it to show that it was nullified or no longer verified. Experian did neither, it left the entry in place as if nothing had changed. This failure defeats the purpose of § 1681s-2(b)'s dispute process, which is to ensure that corrections by furnishers flow through to consumers' credit files. Courts have recognized that CRAs may be held responsible when they *knowingly ignore* information from furnishers that corrects or invalidates prior data. In Plaintiff's case, Experian's inaction after July 25, 2025 demonstrates a willful breakdown in the FCRA's remedial system: the furnisher did its part to investigate and correct, but Experian refused to accept the correction.

34. Experian's continued reporting of the deleted bankruptcy was either a result of grossly negligent oversight or a deliberate policy (for instance, if Experian treated Plaintiff's dispute as coming from a third-party and ignored it). Either way, it constitutes non-compliance with the FCRA. Section 1681s-2(b) creates a right for consumers to have furnishers correct information and for CRAs to receive and implement those corrections. By thwarting that process, Experian effectively "reinserted" a derogatory item without certification, which is itself against FCRA requirements (see 15 U.S.C. § 1681i(a)(5)(B), governing reinsertion of previously deleted items). Notably, Experian was on actual notice from LexisNexis's deletion that the bankruptcy was not to be reported, yet it willfully continued reporting it. Such conduct meets the definition of willfulness under the FCRA (either knowing violation or reckless disregard of statutory duties).

35. As a result of Experian's violation of § 1681s-2(b)'s intended protections (in conjunction with §§ 1681e(b) and 1681i), Plaintiff suffered the damages outlined earlier. The furnisher's deletion should have led to immediate improvement in Plaintiff's credit profile; Experian's obstruction of that correction caused her harm to persist. Thus, Experian is liable to Plaintiff for the same categories of damages, actual, statutory, and punitive, to the extent allowed by law. Plaintiff acknowledges that 15 U.S.C. § 1681s-2(c) and (d) limit direct consumer actions against furnishers for certain violations; however, here Plaintiff is pursuing Experian itself for failing to honor the furnisher's notice and update her report accordingly. Experian's conduct was a direct proximate cause of Plaintiff's injuries because even after the underlying data was fixed by LexisNexis, Plaintiff continued to experience denials and harm solely due to Experian's willful failure to reflect that fix.

35A. In the alternative, Experian's acts and omissions described in Count III also constitute violations of § 1681i and § 1681e(b), as detailed in Counts I and II. Plaintiff includes this Count to emphasize Experian's liability for disregarding the furnisher's corrections, an aspect which aggravates its non-compliance with the FCRA's accuracy and reinvestigation requirements.)

## DAMAGES

36. As detailed above, Plaintiff has suffered a range of actual damages because of Experian's unlawful conduct. These damages include: denial of credit opportunities, such as being declined for at least one loan; loss of the ability to obtain credit at favorable interest rates, as any lender considering Plaintiff saw a recent bankruptcy and either rejected her or offered less favorable terms; damage to Plaintiff's personal and financial reputation, since those who viewed her Experian credit report (including potential creditors and even potential employers or landlords) were misled to believe she had a bankruptcy; and significant emotional distress, including stress, anxiety, frustration, and humiliation. Plaintiff invested time and money to try to correct Experian's error (including postage for certified letters

and fees for accessing credit reports), further adding to her harm. These injuries were the natural and foreseeable result of Experian reporting a derogatory falsehood about Plaintiff for many months.

37. In addition to actual damages, Plaintiff seeks statutory damages (up to $1,000 per willful violation) and punitive damages under 15 U.S.C. § 1681n. Given the egregious nature of Experian's conduct, effectively stonewalling a consumer and ignoring even its own data supplier's correction, an award of punitive damages is justified to deter Experian and other consumer reporting agencies from similar misconduct. Experian is a sophisticated entity that knew (or should have known) its obligations under the FCRA. Its decision to keep reporting the bankruptcy was made in conscious disregard of Plaintiff's rights. Courts in similar cases have allowed punitive damages where a CRA's procedures were so deficient as to amount to a reckless indifference to the truth. For instance, the Fourth Circuit in *Saunders v. Branch Banking & Trust Co.* upheld a punitive damages award against a furnisher that failed to note a debt as disputed, underscoring that willful FCRA violations warrant punishment to deter non-compliance (617 F.3d 436, 445-46 (4th Cir. 2010)). Here, Experian's conduct is comparably willful and calls for punitive measures.

38. Pursuant to 15 U.S.C. §§ 1681n and 1681o, Plaintiff is entitled to recover reasonable attorneys' fees and costs of this action if she prevails. Plaintiff has been forced to retain legal counsel and incur fees to vindicate her rights, due entirely to Experian's refusal to comply with the law voluntarily. An award of fees and costs will help make Plaintiff whole and encourage consumers to enforce their FCRA rights.

Case No. _____ Document 1 Filed 12/1/25

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Arlene Allen-Cornwall respectfully requests that the Court enter judgment in her favor and grant the following relief:

1. Award Plaintiff her actual damages in an amount to be proven at trial, for financial losses, credit denials, higher credit costs, and emotional distress caused by Experian's FCRA violations, pursuant to 15 U.S.C. §§ 1681n(a)(1)(A) and 1681o(a)(1);

2. Award statutory damages of $1,000 for each willful violation of the FCRA by Experian, as provided by 15 U.S.C. § 1681n(a)(1)(A);

3. Award punitive damages in an amount to be determined by the jury, to punish Experian for its willful misconduct and to deter such conduct in the future, pursuant to 15 U.S.C. § 1681n(a)(2);

4. Issue appropriate injunctive relief or a permanent order directing Experian to immediately delete the inaccurate bankruptcy from Plaintiff's credit file and to correct any reports that have been furnished to third parties by notifying all persons who obtained Plaintiff's Experian consumer report in the last two years of the deletion, to ensure the misleading information is not relied upon further;

5. Award Plaintiff the costs of this action and reasonable attorneys' fees, as authorized by 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2);

6. Award interest on any monetary awards as allowed by law; and

7. Grant such other and further relief as the Court deems just, equitable, and proper, including any appropriate declaratory relief.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Case No. _____ Document 1 Filed 12/1/25

DATED: December 1st, 2025

**RESPECTFULLY SUBMITTED**

**Pro Se**

                                      **Arlene Allen-Cornwall**
                                      Plaintiff, Pro Se
                                        1518 Blue Rose Drive,
                                        Ruskin, FL 33570

**EXHIBIT LIST**

The following exhibits are attached and incorporated by reference into this Complaint:

- **Exhibit A**: Plaintiff's written dispute letter to Experian dated February 28, 2025.
- **Exhibit B**: Plaintiff's second dispute letter to Experian dated March 29, 2025.
- **Exhibit C**: Plaintiff's final dispute and Intent-to-Sue letter to Experian dated July 28, 2025.
- **Exhibit D**: LexisNexis deletion confirmation letter dated July 25, 2025.

Each exhibit is cited in the complaint at the relevant factual paragraph supporting Plaintiff's claims under the FCRA.